

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

STATE OF MISSOURI,                )
                                     )   **WD82831**
               **Appellant,**      )
  **v.**                            )   **OPINION FILED:**
                                     )
**LESLIE CHRISTY,**           )   **February 18, 2020**
                                   )
              **Respondent.**   )

**Appeal from the Circuit Court of Platte County, Missouri**
**Honorable Dennis Carl Eckold, Judge**

**Before Division Two:**
**Cynthia L. Martin, P.J., Thomas H. Newton, and Gary D. Witt, JJ.**

The State of Missouri appeals the judgment of the Platte County Circuit Court dismissing the criminal charge of driving while intoxicated (DWI), section 577.010, with prejudice. It claims in one point relied on that it presented substantial evidence of intoxication. The judgment is affirmed.

Ms. Leslie Christy was arrested for DWI on October 5, 2018. Her blood-alcohol content (BAC) was determined to be .07%, or below the legal limit. Her defense counsel subsequently filed a motion to dismiss, and a hearing was held. The following evidence was presented at the hearing:

Deputy William Beeler testified that he is the DWI officer for the Platte County Sheriff's Office. He was working on October 5, 2018, at approximately 12:45 in the

morning when he observed a speeding vehicle. His radar unit confirmed that the vehicle was going 50 miles per hour in a 35-miles-per-hour zone, so Deputy Beeler initiated a traffic stop. Ms. Christy was driving the speeding vehicle.

Deputy Beeler smelled the odor of alcohol coming from inside the vehicle. Ms. Christy stated that she had spilled gasoline in the vehicle and that caused the smell, but Deputy Beeler did not smell gasoline in the vehicle. Deputy Beeler observed that Ms. Christy's eyes were "bloodshot, glassy, and staring in appearance." He asked Ms. Christy to exit the vehicle. When she did, her balance was unsteady. He stated, "She – When she was walking back, she appeared to not – her balance was just off a little bit. She kind of – She kind of stumbled a little bit as she walking back, in between the cars." After she was out of the vehicle, Deputy Beeler smelled "the odor of alcohol coming from her breath and person."

Deputy Beeler asked Ms. Christy to take field-sobriety tests. He first administered the Horizontal Gaze and Nystagmus test (HGN test). According to the deputy, Ms. Christy "swayed noticeably front to back during the test." Deputy Beeler testified that Ms. Christy showed all six clues of impairment on the HGN. Four clues or more indicates impairment. Ms. Christy claimed at trial that the HGN test was not properly administered in multiple ways and thus evidence of its results was inadmissible. Ms. Christy went through the video with Deputy Beeler and identified places where the guidelines for administering the HGN were allegedly not followed. The court ruled that it was admissible and noted that it would consider "what weight, if any, to give to it."

2

The second field-sobriety test was the walk-and-turn test. Ms. Christy was unable to maintain her heel-to-toe stance. She missed touching heel to toe by more than half an inch. She stepped off the line. She used her arms for balance and lost her balance while making her turn. Ms. Christy showed five clues of impairment; two clues or more indicates impairment. The third field-sobriety test was the one-leg stand. Ms. Christy used her arms for balance, swayed, and put her foot down. Ms. Christy showed three clues of impairment; two clues or more indicates impairment.

Deputy Beeler was questioned regarding whether he had previously administered field-sobriety tests to people older than age 60 or to overweight people. He stated he has administered the tests to such people and that "not every person" who was older than age 60 or overweight showed signs of impairment. In his opinion, Ms. Christy was intoxicated when he stopped her.

Deputy Beeler's patrol car was equipped with a dashboard camera (dash cam), and it recorded his stop of Ms. Christy. The recording was played in court during the hearing.

Deputy Beeler was asked about his testimony in prior cases. He acknowledged that his testimony had been found not credible in two cases in Platte County, where Ms. Christy's case was heard.

Deputy Beeler testified that Ms. Christy stumbled when walking from her car. On cross-examination, defense counsel played that portion of the tape and asked Deputy Beeler to identify the stumble. Deputy Beeler testified:

Q: And now you've ordered her out of the car?

A: I asked her to step out of the car.

Q: And now 29 seconds –

A: And she just -- she just kind of stumbled back as she -- when she made her turn. And then when she was walking it appeared that she stumbled a little bit as she was walking back.

Q: That's what you're calling a stumble?

A: Yes. Whenever she -- When she -- When she was turning around, I mean, she took a step back.

In his paperwork, Deputy Beeler indicated there was a moderate odor of alcohol. He did not indicate a strong odor. He acknowledged on cross-examination that the passenger in the car had been drinking. He also acknowledged that there are a lot of reasons unrelated to alcohol consumption that a person might have red eyes. Ms. Christy told Deputy Beeler that night that she had had a long day.

The paperwork had a place for Deputy Beeler to indicate that Ms. Christy was stumbling. He did not make such an indication. Instead, he checked that her balance and walking were uncertain. Deputy Beeler stated, "I deemed that when I wrote the report as uncertain but it's kind of -- uncertain and stumbling are kind of, kind of close together."

The paperwork also had a place where Deputy Beeler could have indicated that Ms. Christy swayed during the HGN test. He did not check that box, however. He did state in the narrative portion of his report that she was swaying. He did not indicate that Ms. Christy was staggering, falling, or had problems with balance and walking. Deputy Beeler also testified as follows:

Q: She had no problem speaking with you?

A: Correct.

Q: She did not slur her speech?

4

A: Correct.

Q: She was not confused?

A: Correct.

Q: She was not incoherent?

A: Correct.

Q: She did not stutter?

A: Correct.

Q: She did not mumble?

A: Correct.

Q: You did not notate any unusual actions; correct?

A: Correct.
Q: And you did note that she was cooperative?

A: Yes and dishonest.

Q: And we could see from the video precisely what her demeanor was?

A: Yes.

Q: And we could see exactly how she walks; correct?

A: Correct.

Q: And the Judge can observe all of those same things that you observed on that particular night?

A: Correct.

Deputy Beeler acknowledged that Ms. Christy was 61 years old and overweight. She told him she was not confident she could complete the physical-dexterity exams. The field-sobriety test guidelines indicate that being older than age 65 or more than 50 pounds overweight can affect a person's ability to do some of the tests and may render

the results invalid. Deputy Beeler did not ascertain how many pounds overweight Ms. Christy was.

In administering the field-sobriety tests, Deputy Beeler observed how well Ms. Christy followed instructions because the inability to do so may be a sign of impairment. Ms. Christy followed his instructions.

After hearing all evidence and arguments, the trial court stated:

> The statute does require substantial evidence of intoxication from physical observations. I've had the benefit of watching a video. I've also heard the testimony. I also acknowledge that sometimes what Deputy Beeler might see is a little different in person as he stands two feet away from somebody than what I'm seeing on a video and I respect that, too. That can happen. And I did see her slightly sway when she was doing the HGN test. I did not see her stumble as she exited the vehicle. I think the problem with the HGN is, you know, we can't view it. There's no way for anybody to view it on the screen. It's not like umpires in New York can, you know, see every angle and see every close up. We don't have that advantage at all here. So, I have to rely on the testimony as to the HGN test. I did not hear the Defendant slur her speech when she responded to anything that the officer asked her. I did not see her stop to steady herself. It didn't look like she performed very well on the field sobriety test, the one-leg stand test, and the heel-to-toe. She did hold her arms out, did have to balance herself as she made her way along the fog line.

The court took the matter under advisement and later issued a judgment sustaining the motion to dismiss the charges. In its judgment, the court found that a chemical analysis of Ms. Christy's breath sample showed less than .08% of alcohol in her blood. The court further found that no evidence was presented that the chemical analysis is unreliable. Finally, the court found:

> No evidence was presented that [Ms. Christy] was under the influence of a controlled substance or a combination of a controlled substance and alcohol. The court further finds that there was no substantial evidence of intoxication from the physical observation of the state's witness, the in-car video or the admissions of [Ms. Christy] presented in evidence.

6

The court accordingly dismissed the charge against Ms. Christy with prejudice.

This appeal follows.[1]

**Legal Analysis**

This court will reverse a dismissal under section 577.037.2[2] only if it is clearly erroneous. *State v. Mignone*, 411 S.W.3d 361, 363 (Mo. App. W.D. 2013). "That means we must be left with a definite and firm impression that a mistake has been made." *Id*. "As in other adversarial proceedings, we view the evidence presented and all reasonable inferences drawn therefrom in the light most favorable to the trial court's order and disregard all evidence and inferences to the contrary." *Id*. (citation omitted). We also defer to the trial court's factual findings and credibility determinations, "remembering that the trial court may choose to believe or disbelieve all or any part of the testimony presented by the State, even though it may be uncontradicted, and may find the State failed to meet its burden of proof." *Id*. (citation omitted).

In the sole point on appeal, the State claims the trial court clearly erred in dismissing the DWI charge against Ms. Christy before trial under section 577.037.2. It states that, by the court's own verbal findings of fact, there was substantial evidence of intoxication from physical observations of the witness and the dash-cam video. The State asserts that the court observed Ms. Christy swaying during the HGN test, performing poorly on the walk-and-turn test, and performing poorly on the one-leg stand test.

---

[1] We note that Ms. Christy did not file a brief with this Court.

[2] *Mignone* was the first case to establish the standard of review applicable to a dismissal under section 577.037. *State v. Mignone*, 411 S.W.3d 361, 363 (Mo. App. W.D. 2013). It references section 577.037.5. *Id.* The substance of section 577.037.5 relevant to our analysis was moved to section 577.037.2 in the version of the statute that became effective January 1, 2017.

Section 577.037.2 states:

If a chemical analysis of the defendant's breath, blood, saliva, or urine demonstrates there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken. If a chemical analysis of the defendant's breath, blood, saliva, or urine demonstrates that there was less than eight-hundredths of one percent of alcohol in the defendant's blood, any charge alleging a criminal offense related to the operation of a vehicle, vessel, or aircraft while in an intoxicated condition shall be dismissed with prejudice unless one or more of the following considerations cause the court to find a dismissal unwarranted:

(1) There is evidence that the chemical analysis is unreliable as evidence of the defendant's intoxication at the time of the alleged violation due to the lapse of time between the alleged violation and the obtaining of the specimen;

(2) There is evidence that the defendant was under the influence of a controlled substance, or drug, or a combination of either or both with or without alcohol; or

(3) There is substantial evidence of intoxication from physical observations of witnesses or admissions of the defendant.

The State argues that it presented substantial evidence of intoxication from physical observations of witnesses or admissions of the defendant under section 577.037.2(3).

"The plain language of section [577.037.2] calls for the court to weigh evidence and evaluate witness credibility in order to decide whether certain 'considerations' render dismissal 'unwarranted.'" *Mignone*, 411 S.W.3d at 364. "Clearly, the statute calls upon the trial court to make a judgment about the nature and quality of the evidence, because that evidence must 'cause the court to find' something." *Id*. "Dismissal is the default position, and, although not specifically stated in the statute, the clear implication is that the burden of persuasion is on the State to come forward with evidence to 'cause the court to find a dismissal unwarranted.'" *Id*.

8

In the current case, the State introduced Deputy Beeler's testimony and the dash-cam video to cause the court to find that dismissal was unwarranted. Ms. Christy contested that evidence. "To contest evidence, a party is not required to present contradictory or contrary evidence." *Id*. "Other ways a party can contest evidence are by cross-examination, by pointing out internal inconsistencies in the evidence, or by challenging the credibility of a witness." *Id*. Ms. Christy contested the State's evidence through cross-examination of Deputy Beeler regarding his observations, his reports, his consideration of Ms. Christy's age and weight, and his credibility in prior cases. Ms. Christy's counsel also used the dash-cam video and argument to the court to contest the State's evidence. "The trial court is afforded wide discretion in resolving conflicts in the evidence, even where there is evidence that would support a different result." *Id*. (citation omitted).

In *Mignone*, the trooper pulled the defendant over for a traffic violation and "noticed the odor of an alcoholic beverage emitting from inside the vehicle." *Id*. at 362. The trooper had the defendant come sit in the patrol car with him. *Id*. Inside the patrol car, the trooper "continued to detect the strong odor of an alcoholic beverage." *Id*. He testified that the defendant "admitted having drinks." *Id*. The trooper also observed that the defendant's "eyes were bloodshot and glassy." *Id*. After administering field-sobriety tests, the trooper testified that he assumed the defendant could not operate a motor vehicle safely. *Id*. He arrested the defendant for DWI. *Id*. Testing of the defendant's BAC revealed it to be .075%. *Id*. A later test revealed a BAC of .051%. *Id*. at 362-63.

9

The defendant in *Mignone* was charged with DWI and subsequently filed a motion to dismiss under section 577.037. *Id*. at 363. At the hearing, the State presented the above evidence. *Id*. The defendant challenged that evidence through cross-examination and argument. *Id*. The trial court dismissed the case, finding "there was no substantial evidence of intoxication from the physical observation of the state's witness or the admissions of defendant as presented in evidence." *Id*. This Court affirmed the dismissal. *Id*. at 366.

In *Mignone*, the State argued,

> that, as used in section 577.037.2(3), the phrase "substantial evidence" has the same significance as it does in the context of a post-conviction review of the sufficiency of the evidence, that is, that the court should determine only whether the State produced competent evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*Id*. at 364.

This Court rejected that argument, noting "that standard of review presupposes that a fact finder has already weighed the evidence and found it believable so as to support a certain proposition urged by the party with the burden of persuasion." *Id*. at 364-65. In *Mignone*, as in Ms. Christy's case, "the trial court did not find the evidence supported any proposition at all, let alone the one proposed by the State—that dismissal was unwarranted." *Id*. at 365.

Section 577.037.2(3) "requires the trial court to weigh evidence and evaluate witness credibility to decide whether there was 'substantial evidence' of intoxication from physical observations of witnesses or admissions of the defendant so as to make the dismissal unwarranted." *Id*. "Substantial evidence is competent evidence, which if believed, would have probative force upon the issues." *Id*. (citation omitted).

10

"Competent evidence is relevant and admissible evidence that can establish the fact at issue." *Id*. (citation omitted).

In Ms. Christy's case, favorable evidence supported the dismissal. It was undisputed that Ms. Christy's BAC was less than .08%. The State's case was premised solely on Deputy Beeler's testimony. Deputy Beeler's testimony has been found not credible in more than one prior case. Ms. Christy noted several instances where the paperwork Deputy Beeler completed did not support his testimony. Even assuming his testimony was credible in this case, the evidence can still support the dismissal when taken in the light most favorable to the dismissal. There was an odor of alcohol in the vehicle, but the passenger had been drinking. Ms. Christy's eyes were bloodshot and red, but she told Deputy Beeler she had had a long day. Ms. Christy's balance was unsteady, but she was overweight, had problems with her knees, and was 61 years old. Ms. Christy used the dash-cam video to argue that the HGN test was not properly administered. Ms. Christy was not slurring, was not confused, was not incoherent, did not stutter, and did not mumble. She did not make any unusual actions. She cooperated with Deputy Beeler and followed his instructions. Given this evidence, and our standard of review, the trial court did not clearly err in finding that there was no substantial evidence of intoxication from the physical observation of the State's witness or the admissions of defendant to make a dismissal unwarranted.

The State also argues that a motion to dismiss under section 577.037 functions like a summary-judgment motion. It claims in its brief, "If the State presents evidence showing there are genuine issues of material facts (in this case, substantial evidence of intoxication), the State may proceed to trial where the jury will weigh the substantial

11

evidence." In support of this assertion, the State cites the dissenting opinion in *State ex rel. McCree v. Dalton,* 573 S.W.3d 44 (Mo. banc 2019). The issue in *McCree* was whether section 577.037.2 requires a pretrial hearing or pretrial determination on the motion. *Id*. at 45. The Missouri Supreme Court found it does not. *Id*. at 47. In a dissent, Justice Zel Fischer wrote, "A fair reading of § 577.037.2 is that a motion to dismiss filed pursuant to this statute is expressly intended to operate much like a summary judgment motion in the civil realm and bring an early resolution to cases when there is not sufficient competent evidence to proceed to trial." *Id*. at 50. The State relies on this assertion to support its argument.

After asserting that this Court should view the proceeding in the same manner by which we view summary-judgment motions, the State highlights the following trial court words:

> And I did see her slightly sway when she was doing the HGN test.
> * * *
> It didn't look like she performed very well on the field sobriety test, the one-leg stand test, and the heel-to-toe. She did hold her arms out, did have to balance herself as she made her way along the fog line. So, unlike the Mignone which I think was a little bit clearer cut for me,[3] this one is a lot closer.

The State concludes that these findings are sufficient to survive the motion to dismiss. It also relies on cases where sufficient evidence existed to support a conviction for driving while intoxicated.

The State's arguments are unpersuasive. The standard of review set forth in *Mignone* is essentially the opposite of the standard of review used in cases involving summary-judgment rulings. *See, e.g., Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245,

---

[3] The same trial judge dismissed the charges in this case and in *Mignone*.

12

246–47 (Mo. banc 2019) ("Appellate review of summary judgment is *de novo*. This Court reviews the record in the light most favorable to the party against whom judgment was entered. The party against whom summary judgment was entered is accorded the benefit of every doubt." (citations omitted)). Justice Fischer comparing the two situations in a dissenting opinion in the context of whether a pretrial hearing is required does not change the *Mignone* analysis and review standard.

Further, the trial court's statements do not require reversal. Through cross-examination, Ms. Christy's counsel argued that she performed poorly on the field-sobriety tests for reasons related to her age, weight, and health. The State did not present evidence or argue that intoxication is the only reason a person might perform poorly on such tests. This point is denied.

## Conclusion

Because the trial court did not err in dismissing the DWI charge, we affirm.

/s/ *Thomas H. Newton*

Thomas H. Newton, Judge

Cynthia L. Martin, P.J., and Gary D. Witt, J. concur.